UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANGELA CONRAD, | CASE NO. 5:21-CV-00344-CEF |
| Plaintiff, | JUDGE CHARLES E. FLEMING |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

## INTRODUCTION

Plaintiff Angela Conrad filed a Complaint against the Commissioner of Social Security (Commissioner) seeking judicial review of the Commissioner's decision denying disability insurance benefits (DIB). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On February 12, 2021, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a report and recommendation, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Conrad filed for DIB on March 22, 2018, alleging a disability onset date of November 1, 2017. (Tr. 190-94). Her claims were denied initially and on reconsideration. (Tr. 91-102, 104-

1

18). She then requested a hearing before an Administrative Law Judge. (Tr. 132-33). Ms. Conrad (represented by counsel), and a vocational expert (VE) testified at a hearing before the ALJ on May 20, 2020. (Tr. 37-70). At the hearing, Ms. Conrad's counsel requested the ALJ keep the hearing open for 30 days for additional evidence, and the ALJ agreed. (Tr. 42-43).

On June 12, 2020, prior to the expiration of the 30 day period, Ms. Conrad's counsel asked for a second extension to obtain the requested evidence. (Tr. 284). On July 2, 2020, without specifically having granted or denied the second requested extension, the ALJ issued a written decision finding Ms. Conrad not disabled. (Tr. 16-31). The Appeals Council denied Ms. Conrad's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 404.955, 404.981). Ms. Conrad timely filed this action on February 12, 2021. (ECF #1).

FACTUAL BACKGROUND

## I.  ADMINISTRATIVE HEARING[1]

On May 20, 2020, Ms. Conrad (represented by counsel) and a vocational expert testified at a telephonic hearing before the ALJ. (Tr. 39-69).

At the start of the hearing, Ms. Conrad's counsel communicated to the ALJ that the record was not complete. (Tr. 42). Counsel requested the ALJ keep the record open for 30 days, in order to receive a requested residual functional capacity opinion from Nurse Baffa, Ms. Conrad's

---

[1]  Ms. Conrad only requests a Sentence Six remand regarding whether the ALJ should have kept the record open for a further extension to include a one-page Medical Source Statement completed by Nurse Baffa. (Pl.'s Fact Supplement, ECF #13, PageID 702, 704). Accordingly, she waives argument on any other issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). Accordingly, I summarize only those portions of the hearing relevant to the request for a Sentence Six remand.

primary mental health provider. (*Id.*). Counsel also indicated record requests had been sent to Cleveland Clinic and Portage Path, but both records departments were behind because of the COVID-19 pandemic. (*Id.*). Counsel indicated they expected "in the next week or two to submit it and complete the record, but we asked for 30 days just out of abundance of caution given [the] pandemic." (*Id*). The ALJ granted a 30-day extension, stating "[i]f that proves to be insufficient, still, let us know. We'll see if we need to extend that at all." (*Id.*). The ALJ then admitted the available exhibits into the record. (Tr. 43).

## II.  PERSONAL AND VOCATIONAL EVIDENCE

Ms. Conrad was 43 years old on her alleged onset date, and 45 years old at the time of the administrative hearing. (Tr. 30). She completed twelfth grade and received a high school education. (*Id.*). Ms. Conrad has no past relevant work. (*Id.*).

## III.  RELEVANT MEDICAL EVIDENCE

**Portage Path Behavioral Health.**[2] Ms. Conrad began receiving mental health treatment from Portage Path Behavioral Health in January 2019. (Tr. 516). Ms. Conrad cancelled her first appointment, scheduled for January 11, 2019. (Tr. 517). On January 18, 2019, she underwent an initial assessment with David Kern, LPCC. (Tr. 518-26). At the assessment, Ms. Conrad indicated she had been without her medications since moving from West Virginia to Ohio in September 2018. (Tr. 518). She had previously received treatment in West Virginia, including psychiatry, and was prescribed Abilify and Valium. (Tr. 519).

---

[2]  I provide here a summary of Exhibit 8F (treatment records from Portage Path Behavioral Health) in its entirety. I do not limit this summary only to those sessions in which Ms. Conrad met with Nurse Baffa.

Ms. Conrad reported symptoms of anger, daily sadness, decreased sleep, mania, mood swings, nervousness, panic attacks, poor concentration, and restlessness. (Tr. 518). She had a past history of trauma, leading to prior substance abuse, but had been sober since 2015. (Tr. 519-20). Ms. Conrad denied suicide attempts and has not had any psychiatric hospitalizations. (Tr. 521). Ms. Conrad reported significant physical pain interfering with her daily activities. (Tr. 523). She displayed appropriate affect, was cooperative, her mood was euthymic, her insight and judgment were good, and her thoughts logical. (*Id.*).

Mr. Kern diagnosed Ms. Conrad with bipolar disorder, generalized anxiety disorder with panic attacks, PTSD, and alcohol and cocaine use disorders (in sustained remission). (Tr. 524-26). Mr. Kern discussed referrals to individual counseling, psychiatry, and group treatment. (Tr. 524). Ms. Conrad only accepted a referral to psychiatry and was scheduled for a psychiatric evaluation on March 19, 2019. (*Id.*).

On March 19, 2019, Ms. Conrad met with Adel Zaraa, M.D., for her psychiatric evaluation. (Tr. 527-33). Ms. Conrad indicated she needed to start with a psychiatrist after her move from West Virginia, and requested an Abilify shot and Valium. (Tr. 527-28). Dr. Zaraa prescribed Abilify injections and trazodone 150 mg, but declined to prescribe Valium for Ms. Conrad. (Tr. 527-28, 531-33). He noted that she had appropriate affect, good attention and concentration with minimal distractibility. (Tr. 529). Her insight and judgment were fair. (*Id.*). Dr. Zaraa indicated Ms. Conrad may be "exaggerating and endorsing many physical vague symptoms" but was not suicidal, homicidal, or psychotic. (Tr. 530). Dr. Zaraa indicated Ms. Conrad's mental health diagnoses were stable or improved. (Tr. 531).

On May 6, 2019, Ms. Conrad presented for a medication plan appointment with Tonya Gessler, PMHNP-BC. (Tr. 535-36). Ms. Conrad reported sleep problems, depressed mood, impulsivity, mania/hypomania, and a need for medication. (Tr. 535).

On June 20, 2019, Ms. Conrad presented to walk-in for an Abilify injection; after the injection appointment was complete, she attended a medication management appointment with a Psychiatric-Mental Health Nurse Practitioner, Amelia Baffa, PMHNP-BC. (Tr. 537-50). NP Baffa indicated Ms. Conrad was "clearly distressed, tearful, crying, stating 'I need help I am so anxious and manic.'" (Tr. 543). Ms. Conrad reported one overnight psychiatric hospitalization, but denied any suicide attempts. (Tr. 537). Ms. Conrad reported she was taking her medications as prescribed; she stated the "medications have been helpful and well tolerated." (Tr. 538).

At this visit, Ms. Conrad reported unstable mood with general anxiety, severe depression, low motivation, and low energy. (*Id.*). Ms. Conrad denied impulsivity, violence, hallucinations, or delusions but reported increased irritability or moodiness. (*Id.*). She exhibited good attention and concentration with appropriate affect but moderate anxiety and depression, and irritability. (Tr. 539). NP Baffa noted an increased risk due to suicidal ideation, but without intent or plan; she provided Ms. Conrad with suicide prevention hotline information. (*Id.*). NP Baffa revisited Ms. Conrad's current medications and placed her on a mood stabilizer. (Tr. 543). NP Baffa spoke with Ms. Conrad about engaging in therapy and reported Ms. Conrad was "contemplating this option." (*Id.*). NP Baffa indicated Ms. Conrad's mental health diagnoses were stable or improved, and recommended follow-up in four weeks. (Tr. 540, 42).

On July 18, 2019, Ms. Conrad met with NP Baffa for follow-up and medication management. (Tr. 545-50). Ms. Conrad reported the medications have been helpful and well-

tolerated. (Tr. 546). She reported stable mood with moderate anxiety, mania, increased irritability/anger, and low depression. (*Id.*). Her affect was appropriate, and her judgment and insight were good but she exhibited irritable mood and racing thoughts. (Tr. 546-47). NP Baffa indicated Ms. Conrad was compliant with her medication. (Tr. 548). NP Baffa continued Ms. Conrad on Abilify, decreased trazodone, and started lithium. (*Id.*). NP Baffa indicated Ms. Conrad was improving. (Tr. 550).

At an August 15, 2019 appointment with NP Baffa, Ms. Conrad indicated she was feeling better and not as sedated on her current medication dosage (she had self-reduced her nighttime lithium dosage). (Tr. 554, 556). She did not recall feeling manic since the last visit and denied impulsivity, violence, hallucinations, delusions, and suicidal ideation or plan. (Tr. 554). Ms. Conrad reported feeling "sometimes" irritable or moody. (*Id.*). NP Baffa continued Ms. Conrad on the medication dosages as she was currently taking them. (Tr. 556). NP Baffa indicated Ms. Conrad was improving, and recommended a follow up visit in six to eight weeks, along with seeing a therapist. (Tr. 558).

On September 12 and October 15, 2019, Ms. Conrad attended monthly appointments for her Abilify injections with Dawn McKinney, R.N. (Tr. 560-65). At both visits, Nurse McKinney indicated no significant change in Ms. Conrad's behavior and noted Ms. Conrad's mood was stable. (Tr. 560-61, 563-64).

On October 15, 2019, Ms. Conrad met with NP Baffa, asking to switch medications. (Tr. 566). NP Baffa indicated Ms. Conrad stated medications have been helpful and well-tolerated, except for a side effect of drowsiness; Ms. Conrad reported stable mood with low anxiety and low depression. (Tr. 567-68). Ms. Conrad denied impulsivity, violence, irritability, hallucinations,

6

delusion, or suicidal intent or plan. (*Id.*). She exhibited appropriate affect and mild depression. (Tr. 568). NP Baffa decreased Ms. Conrad's Abilify dosage but did not otherwise change Ms. Conrad's medications. (Tr. 569). NP Baffa indicated Ms. Conrad was stable and recommended follow up in four to six weeks. (Tr. 571). Ms. Conrad was considering seeing a therapist and was instructed to call NP Baffa if she would like a referral. (*Id.*).

## IV.  MEDICAL OPINIONS

On July 23, 2020 — two months after the administrative hearing concluded — NP Baffa completed a form indicating her medical opinion regarding Ms. Conrad's ability to do work-related activities. (Tr. 15). NP Baffa indicated she had treated Ms. Conrad for over twelve months for unspecified mood disorder and PTSD, including prescribing multiple medications to stabilize her moods. (*Id.*). NP Baffa described her clinical findings, stating: "[Ms. Conrad] has long standing issues with emotional regulation and unstable moods manifested by irritability, severe anxiety, and depressive mood. This causes issues [with] focus, concentration, & task completion." (*Id.*).

In NP Baffa's opinion, Ms. Conrad was unable to sustain full-time work. (*Id.*). NP Baffa indicated Ms. Conrad had "marked" limitations in her ability to understand, remember or apply information; concentrate persist, or maintain pace; or adapt or manage herself. (*Id.*). Ms. Conrad had moderate limitations in her ability to interact with others. (*Id.*). According to NP Baffa, Ms. Conrad would be off-task twenty percent of the day, and would be absent four times per month. (*Id.*).

NP Baffa's statement was presented to the Appeals Council on October 13, 2020. (Tr. 14).

V.     OTHER RELEVANT EVIDENCE

On June 12, 2020, Ms. Conrad's counsel submitted a letter to the ALJ requesting an additional extension to hold the record open until July 10, 2020.[3] (Tr. 284). Counsel indicated they had "contacted . . . Portage Path multiple times each attempting to obtain an update on the status of the record requests which have been pending since April. The afternoon of May 20th Portage Path confirmed they were working on the request, however, three subsequent voicemails have gone unreturned." (*Id.*).

THE ALJ'S DECISION

The ALJ's decision, dated July 8, 2020, included the following findings of fact and conclusions of law:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2.     The claimant has not engaged in substantial gainful activity since November 1, 2017, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3.     The claimant has the following severe impairments: obesity, fibromyalgia, bilateral greater trochanteric bursitis, lumbar and cervical degenerative disc disease, bilateral shoulder degenerative joint disease, bilateral carpal tunnel syndrome, obstructive sleep apnea, borderline personality disorder, depressive disorder, anxiety disorder, and bipolar disorder. (20 CFR 404.1520(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

---

[3]     This letter also references evidence requested from the Cleveland Clinic. However, Ms. Conrad only raises error with respect to  the medical source statement from NP Baffa. (Pl.'s Supp., ECF #13, PageID 704). I therefore only address those records from Portage Path that are specific to NP Baffa's medical source statement.

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently reach overhead, laterally, or in front bilaterally. The claimant can frequently handle and finger bilaterally. The claimant can climb ramps and stairs occasionally, but never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch or crawl. She cannot work at unprotected heights, around hazardous machinery or perform commercial driving. The claimant is able to perform simple, routine tasks and simple work related decisions. The claimant is limited to frequent interactions with supervisors, coworkers, and the general public. The claimant can tolerate few changes in the routine work setting.

6.      The claimant has no past relevant work (20 CFR 404.1565).

7.      The claimant was born on May 14, 1974 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education. (20 CFR 404.1564).

9.      Transferability of job skills is not an issue because the claimant does not have past relevant work. (20 CFR 404.1568).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 21-31).

STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is

more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.

2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in

11

the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

DISCUSSION

Initially, I note Ms. Conrad did not submit a formal Merits Brief in support of her claim for remand. (*See* Pl.'s Supp., ECF #13, PageID 701-11). Rather, she submitted a document titled "Supplement for Social Security Appeals—Plaintiff" containing a brief review of the evidence in Ms. Conrad's case.[4] (*Id.*). Nestled within the document is a short discussion of Ms. Conrad's legal claim and requesting remand for consideration of new and material evidence. (*Id.* at PageID 702-05). Accordingly, I construe this portion of Plaintiff's Supplement as her Merits Brief.

Subsequent to her argument for remand, Ms. Conrad argues as follows:

In his decision, the ALJ acknowledges that Plaintiff ....... been consistently describing in this record.

The ALJ states that Plaintiff has had a somewhat limited treatment history since the alleged onset date, without evidence of psychiatric hospitalization in the record. Such absence of documentation of ongoing treatment is inconsistent and seriously undermines allegation of disabling or even severe limitation of function (Tr. 28). Plaintiff delayed getting mental health treatment after a move from West Virginia and was out out mediation for 5 months (Id.). The ALJ goes on to state that Plaintiff is prescribed medication and reports that the medications are helpful and well tolerated (Tr. 29).

The ALJ fails to address.

---

[4] In this Supplement, counsel for Ms. Conrad also included information for a different claimant. (Pl.'s Supp., ECF #13, PageID 712). I have excluded this portion of the document from my review.

(Pl.'s Supp., ECF #13, PageID 704-05). Ms. Conrad's brief within the Supplement then abruptly ends with her  conclusion and request for relief. (*Id.* at PageID 705). This excerpt contains numerous omissions and incomplete sentences, with no attempt at developing an argument. Therefore, I only review Ms. Conrad's request for a Sentence Six remand because any other argument (or attempted argument) is waived. *See McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) (noting that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Ms. Conrad argues that new and material evidence — NP Baffa's one-page medical opinion — warrants Sentence Six remand for additional proceedings. (Pl.'s Supp., ECF #13, PageID 704). For the reasons that follow, I find that any alleged procedural error by the ALJ was harmless, and that Ms. Conrad has not met her burden to show the materiality of the evidence sufficient to warrant Sentence Six remand.

### 1.    Procedural error, if any, was harmless.

Ms. Conrad argues the ALJ should have upheld his promise to consider providing additional extensions beyond the initial 30 days. (*Id.*; *see also* Tr. 42). Ms. Conrad acknowledges the ALJ kept the record open for an initial 30 days post-hearing. (Tr. 42). Before the expiration of the initial 30-day period, Ms. Conrad's counsel timely submitted a request to keep the record open until July 10, 2020. (*See* Tr. 284) The ALJ included the letter requesting extension as Exhibit 16E, but did not respond to the request when he issued his decision on July 8, 2020. (*See* Tr. 16-35, 284).

Responding, the Commissioner argues Ms. Conrad has not shown good cause for failing to adhere to the ALJ's extension of the five-day rule and urges the Court to reject the evidence untimely submitted to the Appeals Council.[5] (Comm'r's Br., ECF #14, PageID 719-21).

Agency regulations require that claimants submit available written evidence to the ALJ "no later than five business days before the date of the scheduled hearing." 20 C.F.R. § 404.935(a). If the evidence is not available, the claimant "must inform" the ALJ of the missing evidence and "must make every effort to ensure the [ALJ] *receives* all of the evidence." *Id.* (emphasis added). Claimant's counsel must "[a]ct with reasonable promptness to help obtain the information or evidence." 20 C.F.R. § 404.1740(b)(1).

Where the claimant does not comply with the five-day requirement to submit or inform the ALJ of the evidence, the ALJ "may decline to consider or obtain the evidence" unless good cause is shown, according to the circumstances described in § 404.935(b):

> [T]he administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:
>
> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:

---

[5]     The Commissioner incorrectly claims Ms. Conrad "has put forth no good cause for failing to timely submit her evidence. . . . Plaintiff did not submit any additional evidence within 30 days, nor did Plaintiff subsequently request any additional time to gather evidence." (Comm'r's Br., ECF #14, PageID 718). As I discuss in more detail below, Ms. Conrad's counsel did submit a request for additional time and described their efforts to timely obtain the evidence—notably, during Ohio's COVID-19 pandemic stay-at-home order. (Tr. 284).

14

. . .

> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

If the evidence is received before the decision is written,[6] the SSA's Hearings, Appeals, and Litigation Law Manual (HALLEX) instructs: "If an ALJ finds . . . the circumstances in 20 C.F.R. § 404.935(b) apply, the ALJ will accept the evidence into the record and mark the evidence as an exhibit. The ALJ may, but is not required to, address in the decision why [the ALJ] considered the evidence." HALLEX I-2-6-59(C).

But even though the five-day rule permits a claimant to "inform" an ALJ of pending evidence, the claimant's obligation does not end with a mere recitation of the efforts made to obtain the untimely evidence. *Brandy K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-694, 2022 WL 179541, at *6 (S.D. Ohio Jan. 20, 2022) (cautioning that "advocates seeking to protect their clients' interests might be tempted to send a rote '5 day letter' that 'informs' of nothing at all, in an

---

[6] Even if the evidence is not received by the time the ALJ has issued the decision, the claimant still has recourse for either the ALJ or the Appeals Council to review the untimely evidence:

> If the claimant submits evidence after the hearing decision is issued, the ALJ will forward the information to the Appeals Council (AC) if the claimant submitted a request for review of the ALJ's decision. If the claimant has not requested review by the AC, the ALJ may either:
> - Consider revising his or her decision using the appropriate procedures in HALLEX I-2-9; or
> - Return the evidence to the claimant noting in writing that the record is closed, but the claimant may request review by the AC.

HALLEX I-2-6-59(B)(2).

attempt to keep the record open as long as possible"). Rather, Social Security Ruling 17-4p

explains that:

> To satisfy the claimant's obligation under the regulations to "inform" us about written evidence, he or she must provide information specific enough to identify the evidence (source, location, and dates of treatment) and show that the evidence relates to the individual's medical condition, work activity, job history, medical treatment, or other issues relevant to whether or not the individual is disabled or blind. If the individual does not provide us with information specific enough to allow us to identify the written evidence and understand how it relates to whether or not the individual is disabled or blind, the individual has not informed us about evidence within the meaning of 20 CFR 404.935, 404.1512, 416.912 or 416.1435, and we will not request that evidence.

2017 WL 4736894, at *3.

Here, the June 12, 2020 letter requesting the ALJ continue to hold the record open until

July 10, 2020 shows that Ms. Conrad's counsel "actively and diligently" sought evidence from

Portage Path, but despite these efforts, Portage Path had not yet responded. (Tr. 284). The letter

states that counsel had sought "additional relevant medical documents" from Portage Path; that

counsel had been making numerous efforts since April 2020; and that the COVID-19 pandemic's

stay-at-home order had prevented counsel from obtaining the documents within the initial 30-day

extension. (*Id.*). These statements appear to comply with the good cause examples outlined in 20

C.F.R. § 404.935(b).

At the same time, however, this is not enough to satisfy Ms. Conrad's obligation to inform

the ALJ sufficiently that the ALJ could identify the written evidence and discern its relation to the

question of whether Ms. Conrad is disabled. For example, the letter does not identify the evidence

by "source, location, and dates of treatment" or show which of Ms. Conrad's medical conditions

or treatments are described in the requested evidence. *See* SSR 17-4p. In short, this letter does not

sufficiently inform the ALJ as to how the missing evidence is relevant to Ms. Conrad's DIB claim.

Moreover, NP Baffa's medical source statement was not completed until July 23, 2020 – which was *after* the ALJ issued his decision on July 2, 2020 and *after* the extension date requested by counsel (July 10, 2020). (Tr. 15, 16-31, 284). There is no evidence that Ms. Conrad attempted to send the evidence to the ALJ for revision of the decision. Ms. Conrad did submit NP Baffa's medical source statement directly to the Appeals Council on October 13, 2020. The Appeals Council considered NP Baffa's medical source statement but found "this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2).

 I therefore find any alleged procedural error by the ALJ was harmless.

### 2.    Ms. Conrad has not argued that NP Baffa's opinion was material to the ALJ's decision.

Ms. Conrad asserts that, had the ALJ kept the record open, NP Baffa's medical source statement could have reasonably been expected to change the outcome of the ALJ's decision. (Pl.'s Supp., ECF #13, PageID 704). Beyond this rote recitation of the applicable legal standard, Ms. Conrad presents no substantive analysis of the evidence itself or its materiality to the ALJ's decision. The Commissioner disputes the materiality of NP Baffa's statement, asserting it is not supported by any contemporaneous examinations and "conflicts with [NP] Baffa's own examinations she conducted during the relevant period." (Comm'r's Br., ECF #14, PageID 721).

Sentence Six of 42 U.S.C. § 405(g) permits remand of a case for further administrative proceedings without a disposition on the merits. A claimant who seeks a Sentence Six remand bears the burden of showing: (1) the evidence at issue is both new and material; and (2) good cause excuses failing to incorporate such evidence into the record in a prior proceeding. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

17

Evidence is new if it was not in existence or available to the claimant at the time of the administrative proceeding. *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990). Thus, evidence available during the pendency of the administrative proceedings that was not obtained and submitted to the Commissioner in a timely manner does not qualify as "new evidence." *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477 (6th Cir. 2006).

Evidence is material if "a reasonable probability" exists that the Commissioner "would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir. 1988). A post-decision evaluation is not material if it is cumulative of evidence already in the record. *Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 277-278 (6th Cir. 2010).

Finally, as to the requirement of good cause, the Sixth Circuit applies a stringent standard under which a claimant must provide a valid reason for failing to obtain the additional evidence during the administrative proceedings. *Oliver,* 804 F.2d at 966. "A claimant shows good cause by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Ferguson v. Comm'r,* 628 F.3d 269, 276 (6th Cir. 2010) (cleaned up).

Here, NP Baffa's medical source statement was dated July 23, 2020, after the ALJ's July 8, 2020 decision, and is therefore new. But Ms. Conrad has not shown that this single page of evidence was material to the outcome of her DIB claim. The ALJ's decision frequently cited to records from Portage Path Behavioral Health, which include NP Baffa's own underlying treatment notes. (Tr. 22, 24, 25, 27, 28) (ALJ citing to Exh. 8F, which contains the Portage Path Behavioral

Health treatment records). The ALJ noted Ms. Conrad's mental health diagnoses, and incorporated accommodations in his findings in response. (Tr. 29).

At the same time, the ALJ also noted Ms. Conrad's inconsistent treatment history and indicated her lapses in care "seriously undermines allegations of disabling, or even severe, limitations of function, lasting twelve months in duration, and despite treatment." (Tr. 28). Moreover, the ALJ noted Ms. Conrad's "conservative treatment" and that she "is prescribed medication and reports that the medications are helpful and well tolerated." (*Id.*). Treatment notes indicate NP Baffa periodically reduced Ms. Conrad's medication dosage, and Ms. Conrad reported improvement. (Tr. 554, 556, 559). I am not persuaded that the ALJ would have favored NP Baffa's one-page medical source statement over his review of NP Baffa's underlying treatment notes. In particular, it does not seem likely that the ALJ would have credited NP Baffa's identification in the medical source statement of marked functional limitations, as it appears to conflict with NP's contemporaneously-generated treatment notes reflecting Ms. Conrad's improvement under NP Baffa's care.

Moreover, the Appeals Council has already addressed the materiality of NP Baffa's medical source statement, stating:

> You submitted a medical source statement from Amelia Baffa, APRN, dated July 23, 2020 (4 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

(Tr. 2). Ms. Conrad has not presented any argument sufficient to persuade me to speculate about how the ALJ may have considered the evidence, and to contradict a ruling of the Appeals Council.

Because Ms. Conrad has not shown the materiality of Nurse Baffa's medical source statement, I do not reach whether she has shown good cause for its omission.

I therefore recommend the District Court affirm the Commissioner's decision.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I find the

Commissioner's decision denying DIB supported by substantial evidence and recommend the

District Court **AFFIRM** that decision.

Dated: April 22, 2022

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and
Recommendation, a party may serve and file specific written objections to the
proposed findings and recommendations of the Magistrate Judge. *See* Fed. R.
Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly
asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or
waiver of the right to raise the issue on appeal, either to the district judge or in a
subsequent appeal to the United States Court of Appeals, depending on how or
whether the party responds to the Report and Recommendation. *Berkshire v.
Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not
merely indicate a general objection to the entirety of the Report and
Recommendation; "a general objection has the same effect as would a failure to
object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir.
1991). Objections should focus on specific concerns and not merely restate the
arguments in briefs submitted to the Magistrate Judge. "A reexamination of the
exact same argument that was presented to the Magistrate Judge without specific
objections 'wastes judicial resources rather than saving them and runs contrary to
the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186,
2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at
509). The failure to assert specific objections may in rare cases be excused in the
interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th
Cir. 2019).